# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |  |
|---|---|---|---|

**GCIU-EMPLOYER RETIREMENT FUND, et al.,**

      **Plaintiffs,**

      v.

**WILRICK, LLC,**

      **Defendant.**

**Civil Action No. 16-1074 (MAH)**

**OPINION**

**HAMMER, United States Magistrate Judge**

This matter comes before the Court on the motion of Defendant Wilrick, LLC

("Wilrick") to exclude the May 4, 2017 deposition testimony of William Barfuss at trial.[1]

Wilrick's Mot. to Exclude, Sept. 19, 2022, D.E. 140.  Wilrick also requests that the Court

reconsider a January 15, 2019 Order that terminated Wilrick's motion to amend its response to

Plaintiffs' Request for Admission No. 3, and to strike Wilrick's initial response to that request

for admission from the record.  *Id.*  Plaintiffs GCIU-Employment Retirement Fund (the "Fund")

---

[1] *See* Notice of Mot., Sept. 19, 2022, D.E. 140, at 2 (seeking an order "1.  Directing that the May 5, 2017 William Barfuss deposition transcript cannot be used as substantive trial evidence; 2. Directing that the May 5, 2017 William Barfuss deposition transcript is not admissible . . . ."). Parenthetically, the Court notes that the deposition transcript each party submitted as an exhibit reflects the deposition was taken on May 4, 2017.  Wilrick also asks the Court to direct "that any contradictory portions of William Barfuss' testimony, in his two depositions, are not admissible . . . . that William Barfuss' credibility cannot be determined on a cold record in the absence of live testimony . . . . [and] that external evidence may not be used to bolster or impair any contradictory statements within the depositions, or the credibility of William Barfuss."  *Id.*  It is difficult to discern from this broad request exactly what relief Wilrick seeks.  To the extent it merely restates Wilrick's position that the May 4, 2017 deposition should be excluded at trial, that request is denied for the reasons set forth herein.  To the extent Wilrick seeks to exclude other evidence, Wilrick fails to adequately identify it.

and the Board of Trustees of the GCIU-Employer Retirement Fund (the "Trustees") oppose both applications.  Pls.' Opp'n, Oct. 31, 2022, D.E.s 141 & 142.  The Court has considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth herein, the Court will deny Wilrick's motions.

I.   **Background**

The April 28, 2020 Opinion and Order that granted in part and denied in part the parties' summary judgment motions set forth the factual background of this matter.  Op. and Order on Summary Judgment, Apr. 28, 2020, D.E. 80-81 (hereinafter "SJ Op.").  Therefore, the Court recounts only the background necessary to resolve the instant motions.  The Trustees seek to recover $1,079,900 in withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, as well as damages and fees from Defendants Harvard Press, Inc. ("Harvard Press"), Harvard Printing Co. ("Harvard Printing"), and Wilrick. The Trustees assert that the cessation of Harvard Press's operations on December 1, 2009 triggered Harvard Press's and Harvard Printing's (collectively, the "Harvard Entities") obligations for withdrawal liability pursuant to the Harvard Entities' collective bargaining agreements with the Graphic Communications Local 612M of the Graphics Communications Conference/International Brotherhood of Teamsters, and the withdrawal provisions of ERISA. *See* 29 U.S.C. §§ 1381-83.

Plaintiffs also allege that the Harvard Entities and Wilrick constituted a single employer for purposes of withdrawal liability, because those entities were under common control.  As the District Court determined in its April 28, 2020 Opinion, in 1987, C. Richard Barfuss ("Richard") and William Barfuss ("William") each assumed 50% ownership of the Harvard Entities from their father, Carl Barfuss ("Carl").   SJ Op. at 2.  When Carl passed away in 2001, Richard and

2

William became joint owners of property located at 550 Central Avenue, Orange, New Jersey (the "Property"). *Id.* at 2-3. In May 2003, Richard and William created a limited liability company, Wilrick, to own and rent property. *Id.* at 3. Richard and William each held 50% of Wilrick. *Id.* Ownership of the Property was folded into Wilrick in February 2004. During that time, and until the Property was sold in September 2008, Harvard Press paid Wilrick rent for use of the Property. *Id.*

Wilrick sold the Property on September 9, 2008 in exchange for $1,939,079.18, plus a purchase-money mortgage in the amount of $2,450,000. *Id.* at 3. From the $1,939,079.18, William received $950,148.79, and the remainder was placed into an attorney trust account maintained by counsel for Wilrick. *Id.* After the sale, and until Harvard Press closed in December 2009, Harvard Press continued to operate on the Property. *Id.*

Although Harvard Press closed, Wilrick continues to own and lease two properties in exchange for rental payments. *Id.* at 4. Wilrick acquired property in North Providence, Rhode Island in February 2009, where a Rite-Aid Pharmacy operates. *Id.* Wilrick also acquired property in Bedminster, New Jersey in February 2009, on which a daycare center operates. *Id.*

On February 25, 2016, Plaintiffs brought this action. Plaintiffs filed an Amended Complaint on September 12, 2017. The Amended Complaint asks the Court to declare that Wilrick and the Harvard Entities were under common control and thus constituted a single employer for withdrawal liability. The Amended Complaint seeks an award of $1,079,200 in withdrawal liability principal, as well as interest, liquidated damages, and attorneys' fees.

The parties conducted fulsome discovery, which completed on or around August 13, 2019. *See* Letter from Daniel B. Tune, Aug. 13, 2019, D.E. 67 ("The parties have completed discovery[.]"). Thereafter, the parties filed cross-motions for summary judgment. District Judge

Madeline C. Arleo granted summary judgment in Plaintiffs' favor against the Harvard Entities as to withdrawal liability. SJ Op. at 5-8. The District Court concluded that the Harvard Entities completely withdrew from the Fund on December 1, 2009, when Harvard Press permanently ceased all operations (hereinafter, the "Withdrawal Date"). *Id.* at 6. The Court also concluded that Plaintiffs had satisfied the notice and calculation requirements of ERISA, and that the Harvard Entities had not contested the amount of withdrawal liability. *Id.* Therefore, the Court granted summary judgment in Plaintiffs' favor in the amount of $1,079,200 in withdrawal liability principal, $359,822.22 in interest, and $359,822.22 in liquidated damages. Order, Apr. 28, 2020, D.E. 81.

Regarding Wilrick's withdrawal liability as part of Harvard Press's controlled group on the Withdrawal Date, the District Court denied the parties' cross-motions for summary judgment. SJ Op., D.E. 80, at 8-15. The District Court identified genuine issues of material fact concerning two prongs of the analysis. First, the Court determined that there were genuine issues of material fact regarding whether Wilrick constituted a "trade or business" under 29 U.S.C. § 1301. *Id.* at 11. Second, and more relevant to the instant motions, the Court concluded that there were genuine issues of material fact concerning whether Harvard Press and Wilrick "were under common control such that Wilrick was within Harvard Press's controlled group" as of the Withdrawal Date. *Id.* at 12. There is little dispute that on December 1, 2009, Richard and William each held a 50% share of Harvard Press. *Id.* at 13. But fact disputes precluded the District Court from determining whether William still held a 50% interest in Wilrick as of the Withdrawal Date. *Id.* The Court pointed out several potentially conflicting pieces of evidence, including that William had offered inconsistent deposition testimony concerning whether and when he had relinquished his interest in Wilrick to Richard. *Id.* at 14-15. Therefore, the District

4

Court "[could not] determine as a matter of law whether Wilrick was a member of Harvard Press's controlled group pursuant to 29 U.S.C. § 1301." *Id.* at 15.

William died on February 3, 2022. Decl. of Daniel B. Tune, Esq., Sept. 19, 2022, D.E. 140-2 ("Tune Decl."), ¶ 8. He was deposed both on May 4, 2017 and August 27, 2018. Tune Decl., Ex. B, D.E. 140-2 (Transcript of May 4, 2017 deposition); *id.*, Ex. C, D.E. 140-2 (Transcript of August 27, 2018 deposition). Wilrick seeks to exclude the May 4, 2017 deposition testimony at trial. Wilrick argues that William's death makes it impossible for the finder of fact to reconcile any inconsistencies in his testimony, the most salient of which concerns when he relinquished any interest in Wilrick.[2] During the May 4, 2017 deposition, William testified that he relinquished that interest in 2010, and reasoned that was because Harvard Press closed as a business in 2009. *Id.* Ex. B at 8:14-19. But during the August 27, 2018 deposition, William testified that he relinquished his interest in Wilrick in or around September 2008, and had no involvement with Wilrick thereafter. *Id.* Ex. C at 12:3-7. Wilrick also requests that the Court strike its Wilrick's initial response to Plaintiffs' Request for Admission No. 3 from the record.

## II.     Wilrick's Motion to Bar William Barfuss's May 4, 2017 Deposition Testimony

Wilrick first argues that to the extent the May 4, 2017 deposition would be offered to prove the truth of the statements therein, the testimony is inadmissible hearsay pursuant to Federal Rule of Evidence 801(c). Further, Wilrick argues that the deposition testimony cannot be admitted under Rule 804(b)(1)—former testimony of a now unavailable witness—because

---

[2] Curiously, even as Wilrick seeks to bar the May 4, 2017 deposition testimony, it asserts that "we do not believe the testimony is inconsistent." Br. in Supp. of Mot. to Exclude, Sept. 19, 2022, D.E. 140-1, at 4 n.5. Wilrick argues that "William Barfuss has been consistent is [sic] in his testimony that his ownership interest ended with the sale of the building[,]" and the principle discrepancy is simply the year in which the Property was sold. *Id.* at 9.

Wilrick was not present at the May 4, 2017 deposition and therefore lacked an opportunity to examine William.  For the same reason, Wilrick also contends that Federal Rule of Civil Procedure 32, which governs the use of depositions at trial, does not permit admission.  Wilrick additionally asserts that to the extent William's deposition transcripts are contradictory, they should not be deemed admissible.  Wilrick argues that because William cannot testify, the Court should bar the May 4, 2017 deposition testimony pursuant to Federal Rule of Evidence 403. Wilrick reasons that the only available witness with firsthand knowledge of the relevant facts is Richard, and that the conflicting deposition transcripts lack the context necessary for the fact-finder to be able to meaningfully evaluate them.

### 1.   Federal Rule of Evidence 804(b)(1)

Plaintiffs assert that the deposition testimony is admissible under Federal Rules of Evidence 804 and 807, and Federal Rule of Civil Procedure 32.  The Court begins with an analysis of whether the testimony is admissible under Rule 804.  Rule 804, which serves as an exception to the rule against hearsay when a declarant is unavailable as a witness, provides in pertinent part:

> **(a)   Criteria for Being Unavailable.**  A declarant is considered to be unavailable as a witness if the declarant:
>
> . . . .
>
> (4)  cannot be present or testify at the trial or hearing because of death . . . .
>
> **(b)   The Exceptions.**  The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> > **(1)   Former Testimony.**  Testimony that:
> >
> > > (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

> (B)  is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Fed. R. Evid. 804.

Rule 804(b)(1) permits admission of a decedent's former testimony if the proponent satisfies three criteria.  First, the proponent must establish that the deponent is unavailable. Second, the testimony must have been taken at a "trial, hearing, or lawful deposition," regardless of whether it is in the same or a different case.  Finally, "the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  *Haas v. 3M Co.*, Civ. No. 12-2944, 2014 WL 3696043, at *9 (D.N.J. July 24, 2014), *vacated on other grounds*, 613 F. App'x 191 (3d Cir. 2015).  The "opportunity and similar motive" element is satisfied if there are "interests in law [that] are the claims or demands or desires which human beings, either individually or in groups or associations or relations, seek to satisfy."  *Lloyd v. Am. Express Lines, Inc.*, 580 F.2d 1179, 1186 (3d Cir. 1978) (quoting Roscoe Pound, *A Survey of Social Interests*, 57 Harv. L. Rev. 1 (1943) (internal quotation marks omitted)).  The Third Circuit has explained that "'[s]imilar motive' does not mean identical motive, and whether there was a similar motive is an inherently factual inquiry." *Haas*, 613 F. App'x at 196 (citing *United States v. Salerno*, 505 U.S. 317, 326 (1992) (Blackmun, J. concurring)).

In *Haas*, plaintiff Carl Brasmer brought personal injury and wrongful death claims based on his exposure to asbestos.  Mr. Brasmer, passed away while his deposition was only partially completed, because defendant Boeing Company had questioned him, but defendant General Electric had not.  2014 WL 3696043, at *9-*10.  The district court overruled General Electric's

objection to admitting Mr. Brasmer's partial deposition testimony before it had an opportunity to question him, but nonetheless granted defendants' summary judgment motions. *Id.* at *10, *11-*15. On appeal, the Third Circuit reversed the summary judgment order, but affirmed admission of Mr. Brasmer's testimony over General Electric's objection. *Haas*, 613 F. App'x at 196. The Third Circuit rejected defendant General Electric's argument that it did not have an opportunity to cross-examine Mr. Brasmer because the deposition had not been completed when Mr. Brasmer passed away. *Id.* The Third Circuit noted that General Electric's counsel had been present for Boeing's questioning of Mr. Brasmer, and that Boeing's questioning adequately protected General Electric's interests for purposes of the "opportunity and similar motive" element. *Id.* at 196-97.

In this case, there is no dispute that the first two elements of the Rule 804(b)(1) analysis are satisfied. William has passed away, and the May 4, 2017 testimony was taken under oath during a lawfully constituted deposition. Tune Decl., ¶ 8 & Ex. B. The dispute lies in whether Plaintiffs, as the proponents of the May 4, 2017 deposition testimony, have established that Wilrick had an opportunity and similar motive to develop William's testimony through examination. Wilrick contends that neither it nor its counsel was present at William's May 4, 2017 deposition, and therefore had no opportunity to develop William's testimony as Rule 804(b)(1)(B) requires. For the following reasons, the Court concludes that Plaintiffs have satisfied the "opportunity and similar motive" element, and that the May 4, 2017 deposition testimony is admissible.

First, Brian Fahey, Esq. appeared at the May 4, 2017 deposition as counsel for all Defendants. *See* Tune Decl., Ex. B. By the time Mr. Fahey appeared in this matter, he had already represented Wilrick and the Barfusses in other pension fund litigation concerning

withdrawal liability, specifically *Graphic Arts Local 62B Industry Pension Fund v. Harvard Printing Co.*, Civ. No. 12-4142 (SDW) ("*Graphic Arts*").  And more than a year before the May 4, 2017 deposition, Mr. Fahey wrote Plaintiffs' counsel and held himself out as counsel for Wilrick as well as the Harvard Entities in this matter.  *See* April 15, 2016 letter from Brian W. Fahey Jr. to Matthew T. Clark, Decl. of Michael S. Adler ("Adler Decl."), Ex. B, D.E. 142-2.  In that letter, Mr. Fahey asserted that the parties' settlement in *Graphic Arts* barred Plaintiffs from pursuing the claims in this case, and requested Plaintiffs to "voluntarily stipulate to suspend the current litigation" so as to avoid further litigation costs.[3]

Second, the transcript of the May 4, 2017 deposition reflects that Mr. Fahey had a full and fair opportunity to participate and, at times, did so.  Mr. Fahey had an opportunity to formally question William, but declined to do so.  Tune Decl., Ex. B, at 26:19 ("Mr. Fahey: No

---

[3]  Defense counsel had not yet entered an appearance in this matter at the time of the May 4, 2017 deposition.  At that time, the parties were in a dispute about whether Plaintiffs had properly served process.  The Court had entered both default and default judgment against Defendants. However, following a conference with Judge Arleo on July 19, 2017, Her Honor vacated the default judgment for insufficient service of process and based on Mr. Fahey's representation that he would accept service of process for Defendants.  Order, July 28, 2017, D.E. 17.  That Defendants had not entered a formal appearance on the docket does not alter the Court's conclusion that the May 4, 2017 deposition satisfies the elements of Rule 804(b)(1).  Even if Mr. Fahey had not formally filed a notice of appearance on the docket, he held himself out as Defendants' counsel and appeared on their behalf for the May 4, 2017 deposition.  Wilrick's suggestion that it did not appear for the deposition because of the parties' ongoing dispute concerning service would require the Court to ignore the deposition entirely, and elevate form over substance.  Although it might be unusual for parties to agree to proceed with a deposition pending a service issue, the transcript of the May 4, 2017 deposition reflects that occurred here. William submitted to the deposition and testified under oath.  Mr. Fahey appeared on behalf of the Defendants, service issues notwithstanding, and the deposition was taken, recorded, and transcribed.  The transcript of the deposition contains no indication whatsoever that Wilrick, as opposed to the other Defendants, did not appear for it, or that Mr. Fahey qualified or limited his appearance to not include Wilrick.  To the contrary, it appears that Mr. Fahey appeared on behalf of all Defendants at the May 4, 2017 deposition, as he did in urging a stay of this case as to all Defendants in his April 15, 2016 letter to Plaintiffs' counsel, and in moving to dismiss the Complaint on August 31, 2017.

cross."). Mr. Fahey clarified, on the record, that Wilrick did not own two buildings other than the Property in Orange when Wilrick was originally formed, and that "Wilrick was originally formed specifically for 550 Central Avenue. When 550 Central Avenue was sold, Billy took a distribution from Wilrick, forewent his interests in the entity, Rick maintained the entity and later purchased the two other buildings." *Id.* at 9:17-10:3.

At other points during Plaintiffs' examination of William, Mr. Fahey interjected in order to question William, or at least clarify his testimony. *Id.* at 17:4-9 ("Mr. Fahey: That's not entirely correct . . . . That's why it's not entirely correct."); 17:17-18 ("Mr. Fahey: Wasn't there a location on Harvard Place or Harvard Avenue?"); 21:8-12 ("Mr. Fahey: Can I go back to that last question. The question is do you know and the answer is no. Do you mean to say you don't know or do you mean to say the answer is no?"). Accordingly, the Court cannot abide Wilrick's suggestion that when Mr. Fahey appeared for Defendants at the May 4, 2017 deposition, Wilrick's interests somehow remained unprotected. Mr. Fahey advanced legal positions on behalf of Wilrick and the other Defendants in this matter by virtue of his April 15, 2016 letter suggesting settlement in *Graphic Arts*, and appeared, participated in, and had the opportunity to examine William during the deposition. Further, after Judge Arleo vacated the default judgment, Mr. Fahey moved on behalf of all Defendants to dismiss the matter pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. to Dismiss, Aug. 13, 2017, D.E. 24.

Third, unlike the incomplete deposition in *Haas*, which the district court and Third Circuit still found admissible under Rule 804(b)(1), the May 4, 2017 deposition of William was continued on August 27, 2018. Tune Decl., Ex. C, D.E. 140-2. Mr. Fahey appeared for William, and Mr. Tune, having entered the case on April 12, 2018, D.E. 50, appeared for all Defendants. *Id.* at 2. Mr. Fahey examined William concerning the formation of Wilrick and his involvement

in it. *Id*. at 17:21-19:14.  Mr. Tune did not ask any questions in his capacity as counsel for

Wilrick and the other Defendants. *Id*. at 19:19.  Accordingly, even if there were concerns about

William's testimony at the May 4, 2017 deposition, Wilrick's counsel had every opportunity at

the August 27, 2018 deposition to examine William.

Finally, Wilrick's interests overall have not changed between the filing of the Complaint

and William's May 4, 2017 deposition, or between William's May 4, 2017 and his August 27,

2018 depositions, or even much since that testimony.  Plaintiffs' theory of Wilrick's withdrawal

liability has remained consistent throughout this litigation, and the core legal issues have not

changed.  A comparison of William's testimony confirms this conclusion, in that the areas of

inquiry largely overlapped during both depositions.  For example, during William's May 4, 2017

deposition, he was asked about his ownership in Wilrick, when he transferred it, if and when he

stopped receiving any compensation from Wilrick, why he surrendered his interest in Wilrick,

and what other assets Wilrick owned. *See, e.g.,* Tune Decl., Ex. B, at 8:8-9:4, 9:8-16.  He also

was asked about the management, operations, records, and assets of the Harvard Entities. *Id.* at

11:5-9, 12:6-14:15, 15:14-17:22.  At his August 27, 2018 deposition, William was questioned

concerning his and Richard's role in Harvard Press and its operations, Wilrick's holdings

including the Property, the surrender of his interest in Wilrick, whether he continued to receive

income from Wilrick, and whether he paid or otherwise satisfied any of Wilrick's liabilities. *Id.*,

Ex. C, at 6:3-8:8, 8:22-10:6, 12:7, 18:20-19:15.

For the foregoing reasons, the Court is satisfied that Plaintiffs have satisfied the

"opportunity and similar motive" element of Rule 804(b)(1).  Accordingly, the Court concludes

that Plaintiffs have satisfied the elements to admit William's May 4, 2017 deposition testimony

pursuant to Rule 804(b)(1).  Wilrick's motion to exclude the testimony at trial is denied.

### 2.   **Federal Rule of Evidence 807**

The Court also is satisfied that even if the May 4, 2017 deposition was not admissible

under Rule 804(b)(1), it is admissible under Rule 807, commonly known as the residual

exception to the rule against hearsay.  Rule 807 provides in pertinent part as follows:

> (a)   In General.   Under the following conditions, a hearsay
> statement is not excluded by the rule against hearsay if the statement
> is not admissible under a hearsay exception in Rule 803 or 804:
>
> > (1)   the statement is supported by sufficient guarantees of
> > trustworthiness—after considering the totality of the
> > circumstances under which it was made and evidence, if any,
> > corroborating the statement; and
> >
> > (2)   it is more probative on the point for which it is
> > offered than any other evidence that the proponent can
> > obtain through reasonable efforts.

Fed. R. Evid. 807.  Rule 807 imposes an onerous burden on the proponent to demonstrate that

the statement is reliable, and is to be used only in "rare situations."  *Bohler-Uddeholm Am., Inc.*

*v. Ellwood Grp., Inc.,* 247 F.3d 79, 112 (3d Cir. 2001); *United States v. Bailey,* 581 F.2d 341,

347 (3d Cir. 1978).  The Court may, but is not required to, consider myriad factors to determine

the statement's reliability, probative value, potential for surprise or other prejudice to the

adversary, and whether its admission is consistent with the rules and administration of justice,

such as assisting the fact-finder's search for the truth.

In *Bohler-Uddeholm Am., Inc.*, the Third Circuit affirmed the trial court's admission

under Rule 807 of an affidavit from an individual who died before trial.  The Third Circuit relied

on the trial court's findings that (1) the affidavit not only was probative of a material fact, it was

also highly probative because of the affiant's unique position in Uddeholm, (2) the defendant had

adequate notice that the affidavit would be used at trial; (3) the defendant, through its witnesses,

had the opportunity to rebut the affidavit; and (4) the affidavit was trustworthy because the

witness was known to the parties, the affidavit was made under oath, the affiant had personal

knowledge of the assertions, the affiant had no financial motive, and other evidence corroborated

the assertions. *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 112-13; *see also AAMCO*

*Transmissions, Inc. v. Baker,* 591 F. Supp. 2d 788, 799 (E.D. Pa. 2008) (trial court may consider

"(1) whether the statement was made under oath; (2) whether the statement was voluntarily

made; (3) whether the statement was based on personal knowledge; (4) whether the declarant

made a prior inconsistent statement; (5) whether the statement was videotaped; (6) whether the

declarant was subject to cross-examination; (7) the proximity of time between the events

described and the statement; (8) whether the statement is corroborated; (9) the declarant's

motivation to fabricate; (10) whether the statement is prepared in anticipation of litigation; (11)

the spontaneity of the statement; and (12) whether the declarant's memory was faulty.").

    The May 4, 2017 deposition testimony bears many of the same characteristics in terms of

its probative value, reliability, and bases for admission as the affidavit in *Bohler-Uddeholm Am.,*

*Inc.* There can be no dispute that William voluntarily appeared and testified under oath at his

May 4, 2017 deposition. The deposition was recorded by a court reporter. William knew he

would be subject to questioning by counsel and, indeed, was instructed concerning that process,

on the record. Tune Decl., Ex. B, at 4:11-24 (counsel for GCIU explaining his representation of

Plaintiffs and instructing William in the event of objection or if William did not know an answer

to a question). Unlike the affidavit in *Bohler-Uddeholm Am., Inc.,* William's testimony was

subject to cross-examination, as Defense counsel had opportunities to question William at both

the May 4, 2017 and August 27, 2018 depositions. *See, e.g., id.* at 26:19. That William had

personal, first-hand knowledge of the subject matter of his testimony—specifically his ownership

and disposition of an interest in Wilrick—is manifest. The Court struggles to imagine a more

qualified witness than William to testify concerning his understanding of his ownership interest in Wilrick. In fact, William admitted that he had ownership interests in the Harvard Entities and Wilrick, and first-hand knowledge of the date when he transferred his ownership interest in Wilrick. *Id.* at 8:8-22.

The Court also finds that the May 4, 2017 testimony is sufficiently corroborated to assure its trustworthiness under Rule 807.[4] First, there is little dispute that at least as of May 22, 2003 and for some time thereafter, William owned 50% of Wilrick and the Property. Member Agreement of Wilrick, Adler Decl., Ex. J., D.E. 142-10. Additionally, as discussed below concerning Wilrick's motion to strike its initial response to Plaintiffs' Request for Admission No. 3, Wilrick previously admitted that William and Richard each owned one-half of Wilrick on December 1, 2009 and for some time thereafter. Moreover, Defense counsel has acknowledged that in certain critical respects, the May 4, 2017 deposition testimony is consistent with the August 28, 2017 testimony. *See supra* n.2. In fact, Wilrick itself has previously relied on the May 4, 2017 deposition. *See* Decl. of Daniel B. Tune in Supp. of Summary Judgment, Sept. 13, 2019, D.E. 70-4, at ¶ 2.P. & Ex. 16, May 4, 2017 Dep. Tr. of William, D.E. 70-20.

The Court is satisfied that Wilrick has means to rebut the testimony. Of course, it can introduce William's August 27, 2018 deposition testimony. Additionally, Wilrick can elicit testimony from Richard that either through oral agreement or otherwise, William relinquished

---

[4] As to whether William had a financial interest in the outcome of the litigation when he testified, and thus motive to prevaricate, *see Bohler-Uddeholm Am., Inc.*, 247 F.3d at 113, if Wilrick is correct that William discharged his interest before the Withdrawal Date, the answer must be no. If William did not transfer his ownership interest Wilrick until 2010, as he testified on May 4, 2017, it is difficult to imagine his motivation to lie, since that testimony is not favorable to Defendants concerning whether Wilrick was within Harvard Press's controlled group. In any event, this factor is less significant where, as here, the party-opponent seeks to introduce the statement.

his interest in Wilrick on or before September 2008. *Bohler-Uddeholm Am., Inc.*, 247 F.3d at 113 (finding that adversary had "ways to rebut the affidavit" including through testimony of witnesses present at operative meeting).

The Court also finds that the testimony is highly probative concerning the issue of whether, on the Withdrawal Date, William retained the 50% interest in Wilrick such that Wilrick was under the common control of Harvard Press. As Plaintiffs note, although the Wilrick Member Agreement establishes that William owned 50% of Wilrick as of May 22, 2003, there is no documentary evidence regarding whether William transferred or otherwise disposed of that interest before the Withdrawal Date. A Wilrick resolution that is dated September 3, 2009, and appears to have been signed by Richard and William, provides that William would no longer be a manager or member of Wilrick for the Bedminster and North Providence properties. Adler Decl., Ex. K, D.E. 142-1. But the resolution is silent as to the Property. *Id.* Further confounding the issue is a declaration by Richard that Defendants filed after discovery closed and in support of their summary judgment motion. In that declaration, Richard claimed that "William Barfuss relinquished his entire interest in Wilrick, LLC in September 2008 per an oral agreement between William Barfuss and me." Decl. of C. Richard Barfuss, D.E. 77-3, ¶ 1. Yet neither William nor Richard raised the oral modification during their depositions, despite extensive questioning concerning their ownership interests in Wilrick. Further, Mr. Fahey testified that he did not believe there had ever been a written amendment of the membership agreement, although his testimony is unclear if the agreement had otherwise been amended. Tune Decl. in Supp. of Summary Judgment, Ex. 17, D.E. 70-21, at 75:4-76:3.

To be sure, William's May 4, 2017 deposition testimony contradicts much of the Defendant's assertions recited above. It also is inconsistent with William's own testimony on

August 27, 2018 regarding the disposition of the Property and when William relinquished his interest in Wilrick.  But that does not diminish its probative value.  To the contrary, the trier of fact is entitled to consider the testimony in order to have the fullest record possible in assessing what, if any, ownership interest William possessed in Wilrick and the Property on the Withdrawal Date.  That assessment is a central consideration in determining common control for purposes of withdrawal liability.  *See* SJ Op., D.E. 80, at 13 ("There is a genuine dispute as to whether William still held a 50% interest in Wilrick as of the Withdrawal Date, such that Wilrick would be under 'common control' of Harvard Press because the same 'five or fewer persons' (i.e., Richard and William) had a controlling interest and effective control in both entities, or whether William withdrew from Wilrick when it sold the Property in September 2008.").

For those reasons, even if Rule 804(b)(1) did not allow for admission of the May 4, 2017 deposition, that testimony would be admissible under the residual hearsay exception in Rule 807.

### 3.      Federal Rule of Evidence 403

Wilrick also argues that the Court should bar the May 4, 2017 testimony pursuant to Rule 403.  The Court disagrees.  Under Rule 403, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Wilrick contends that the May 4, 2017 deposition lacks probative value.  Wilrick's Br. in Supp. of Mot. to Exclude, D.E. 140-1, at 34 (seeking exclusion "[g]iven the lack of probative value of the depositions transcripts and the inherent speculation as to the transcripts"[5]).  But the

---

[5]  Wilrick's use of the plural–i.e., "transcripts–is puzzling.  The Notice of Motion seeks exclusion of only the May 4, 2017 transcript.  Notice of Mot., Sept. 19, 2022, D.E. 140, at 2.  As

foregoing discussion establishes that the May 4, 2017 deposition is highly probative to resolve a genuine issue of material fact. The Court recognizes that William's testimony that he sold his interest in Wilrick to Richard in or around 2010, and therefore after the Withdrawal Date, is potentially prejudicial to Wilrick. But that does not make the prejudice unfair for purposes of Rule 403. Material evidence admitted at a trial is often prejudicial. *See McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923 (3d Cir. 1985) (quoting *Dollar v. Long Mfg., N.C. Inc.*, 561 F.2d 613, 618 (5th Cir. 1977) ("Virtually all evidence is prejudicial or it isn't material."))). The question is whether Wilrick has demonstrated a "particularized danger of unfair prejudice." *Id.* Wilrick has failed to do so. Its best argument is that it will be difficult for the trier-of-fact to determine the veracity of William's May 4, 2017 deposition testimony "on a cold record[,]" and to reconcile the differences between it and the August 27, 2018 deposition testimony. Wilrick's Br. in Supp. of Mot. to Exclude, D.E. 140-1, at 29. That argument falls well short of the mark to bar admission under Rule 403. First, that concern is not indicative of prejudice. Second, even if the "cold record" poses a challenge, that is equally true of the August 27, 2018 deposition testimony, and even Richard's claim that there was an oral modification of the member agreement. In fact, to exclude the May 4, 2017 deposition testimony and allow only the August 27, 2018 deposition testimony concerning when William disposed of his interest in Wilrick, would severely and unfairly prejudice Plaintiffs by presenting an incomplete picture of William's testimony. In short, the death of William and his absence from the trial in terms of live testimony inevitably poses challenges for the parties and the fact-finder alike. But those

---

Wilrick is the master of its own motion, and Wilrick's substantive argument addresses the May 4, 2017 deposition, the Court has ruled according to the relief sought in the Notice of Motion.

challenges, and the contradictions between the two deposition transcripts, certainly do not constitute particularized unfair prejudice to Wilrick.

**III.** **Wilrick's Application to Strike Its Initial Response to Plaintiffs' Request for Admission No. 3**

The Court now considers Defendant's request concerning Plaintiffs' Request for Admission No. 3.  Wilrick proposes that "[t]he Court should revise its ruling that Wilrick's initial request for admission #3 response remains in the record."  Wilrick's Br. in Supp. of Mot. to Exclude, D.E. 140-1, at 37.  Some background is necessary to put Wilrick's request in its appropriate context.  In April 2018, as the parties were engaged in discovery, Plaintiffs served requests for admissions on Defendants.  Request for Admission No. 3 ("RFA #3") stated: "Effective prior to December 1, 2009 and continuing past that date, Richard Barfuss and William Barfuss each held 50% ownership and voting stock in Wilrick."  Wilrick initially responded:

> Denied as Wilrick, LLC is an 'LLC' and there is no 'voting stock.'
> It is admitted that the Wilrick LLC was owned 50/50 by Richard
> Barfuss and William Barfuss on December 1, 2009 and for a time
> thereafter.  It is denied that the ownership continues to this date.

But in December 2018, as fact discovery was nearing completion, *see* Amended Scheduling Order, Oct. 16, 2018, D.E. 55; Order, Feb. 20, 2019, D.E. 63, Wilrick sought to amend RFA #3, as follows:

> Objection.  This request for admission is too vague as to the time
> period covered because the item sets forth no beginning or ending
> time.  It merely seeks an admission as to times before, on, and after
> December 1, 2009.  Notwithstanding said objection, Defendants
> deny this item as stated, as Carl Barfuss owned 100% of Wilrick,
> LLC as of September 8, 2009.

Plaintiffs did not object to the amendment.  Instead, they posited that they would rely on the original responses as well as the amended responses and the information exchanged in discovery. Wilrick's Br. in Supp. of Mot. to Exclude, D.E. 140-1, at 37.

18

Apparently dissatisfied with Plaintiffs' response, Wilrick moved on January 10, 2019 to amend its responses to Plaintiffs' requests for admissions.  D.E. 56.  By Order filed on January 15, 2019, the Court terminated the motion and ordered the parties to meet and confer regarding it.  Order, Jan. 15, 2019, D.E. 59.  The Order also provided that "if necessary, the Court will address the substance of the motion at the February 7, 2019 settlement conference."  *Id.* Although the matter did not settle on February 7, 2019, Wilrick admits that the parties reached agreement on the issue of RFA #3: "At the settlement conference, the parties and the Court discussed the request for admission issue and the Responses were amended, however, that the erroneous statement had been made then corrected would remain part of the record."  Wilrick Statement of Undisputed Material Facts, D.E. 77-1, ¶ 58.W; Wilrick's Br. in Supp. of Mot. to Exclude, D.E. 140-1, at 38.  Thereafter, Wilrick did not raise the issue until the instant motion, more than three years later.

Wilrick argues that the Court should revise "this interlocutory decision" pursuant to Federal Rule of Civil Procedure 54(b).[6]  Rule 54(b) provides in pertinent part as follows:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Wilrick maintains that the Court's prior ruling "overlooked the nature of amendments, specifically whether an amended paper supplants an original paper."  *Id.* at 39-40.  Wilrick contends that in *Ramirez v. Collier*, the Supreme Court noted that "[a]s a general rule, when a

---

[6]  Defendant also argues that the time limits of Local Civil Rule 7.1(i), which allows fourteen days for a party to file a motion for reconsideration, cannot supersede Rule 54(b).  For the reasons set forth herein, the Court need not address this issue.

plaintiff files an amended complaint, the amended complaint supersedes the original, the latter being treated thereafter as non-existent."  142 S. Ct. 1264, 1276 (2022) (quoting *Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) (internal quotation marks omitted)).[7]

Wilrick's motion fails for several reasons.  First, there is no substantive order to reconsider.  The only order that this Court issued concerning RFA #3 terminated the original motion to afford the parties an opportunity to resolve the issue.  Order, Jan. 15, 2019, D.E. 59. As Wilrick itself acknowledges, the parties resolved the issue when they reached a mutual agreement whereby both the original answer to RFA #3 and the amended answer would stand. That agreement obviated the need for this Court to take any substantive action.

Second, Defendant fails to address the applicable standards under Federal Rule of Civil Procedure 36, which governs requests to admit.  Under Rule 36, matters deemed admitted are "conclusively established."  Fed. R. Civ. P. 36(b).  However, the court may permit deemed admissions to be withdrawn or amended "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  *Id.*; *see also Baker v. Potter,* 212 F.R.D. 8, 12 (D.D.C. 2002) ("[W]ithdrawal is permissible if a party demonstrates that withdrawal will serve the presentation of the merits without prejudicing the party who requested the admissions").  Additionally, consistent with the "good cause" standard under Federal Rule of

---

[7]  The dicta in *Ramirez* on which Wilrick relies is entirely inapposite.  It has long been settled that as a general principle, an amended pleading replaces the original.  *See, e.g., Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002) ("An amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit."); *Bryant v. Lanigan,* Civ. No. 15-3205, 2016 WL 164998, at *1 n.1 (D.N.J. Jan. 14, 2016) (noting that "an amended complaint normally replaces the original complaint entirely, rendering the initial complaint inoperative . . . .").  That an amended pleading supplants an existing one has little to do with amendments to a request for admission, which are governed by Federal Rule of Civil Procedure 36.

Civil Procedure 16, the court should consider "whether the moving party can show good cause for the delay." *Gwynn v. City of Phila.*, 719 F.3d 295, 298 (3d Cir. 2013) (internal citation omitted). A court has great discretion in determining whether to permit a party to withdraw or amend its responses to RFAs. *United States v. Branella*, 972 F. Supp. 294, 301 (D.N.J. 1997). Nonetheless, a court may deny withdrawal or amendment of an admission if the opposing party demonstrates that it would suffer prejudice, such as reliance on the admissions to prepare for trial. *Id.*

This case presents a somewhat unusual scenario. As part of the parties' compromise, Wilrick already has supplemented its response to RFA #3, such that both the original response and the amended response would stand. But Wilrick now seeks to retract its original response, such that only the amended response would stand. In short, Wilrick seeks to amend its amendment. Allowing Wilrick to undo the parties' agreement, more than three years after the compromise was reached, and well after the close of fact discovery, would severely prejudice Plaintiffs. It would allow Wilrick to completely negate its original admission that William and Richard each owned 50% of Wilrick on December 1, 2009 "and for a time thereafter[,"] and replace it wholesale with the assertion that Carl Barfuss owned 100% of Wilrick as of September 8, 2009. With the passing of William, reopening discovery at this very late date to remediate some of the prejudice to Plaintiffs would be insufficient. Moreover, Wilrick has not shown good cause for the request. Discovery has been closed for quite some time, and Wilrick has presented no change in circumstances to explain why it could not have presented this application at a much earlier time in the litigation.

For those reasons, Wilrick's request that the Court revisit its January 15, 2019, Order, or allow Wilrick to further amend its responses to RFA #3, is denied.

**IV.** **Conclusion**

For the reasons set forth above, Wilrick's motions, D.E. 140, are denied in their entirety.

An appropriate Order accompanies this Opinion.


                                        *s/ Michael A. Hammer*
                                        **United States Magistrate Judge**

**Dated**: April 21, 2023